United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL LOUTZENHISER,                          No. C-11-2925 TEH (PR)

                    Plaintiff,              ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANTS'
          v.                                MOTION TO DISMISS AND FOR
                                            SUMMARY JUDGMENT; STAYING
R. GROUNDS, et al.,                         ACTION AND REFERRING FOR
                                            SETTLEMENT PROCEEDINGS;
                    Defendants.             DIRECTIONS TO CLERK

_____/         Doc. nos. 39, 45

I

          Plaintiff, an inmate at the Correctional Training Facility
in Soledad, California (CTF), filed a pro se civil rights action
under 42 U.S.C. § 1983, and the Americans with Disabilities Act of
1990, 42 U.S.C. § 12101 et seq. (ADA).  The operative pleading is
Plaintiff's Second Amended Complaint (SAC), in which Plaintiff
alleges that Defendants cancelled his prescription for a cane and
failed to timely provide him with new, appropriately sized,
orthopedic footwear.  The Court screened the SAC on October 4, 2013
and determined that it stated: (1) an Eighth Amendment claim against

CTF Dr. Bright (Dr. Bright) and CTF R.N. Fox (Nurse Fox); (2) an ADA claim against the California Department of Corrections and Rehabilitation (CDCR) and CTF-Medical; and (3) a supplemental state-law breach of contract claim against the CDCR, Dr. Bright, and Nurse Fox for breach of the settlement agreement reached in <u>Loutzenhiser v. Traquina</u>, Eastern District of California case number S-04-1937 LKK PAN.

Now before the Court is Defendants' combined motion to dismiss and motion for summary judgment.  Plaintiff has filed an opposition[1], and Defendants have filed a reply.

II

The following facts are undisputed unless otherwise noted:

A

In 1971, Plaintiff was involved in a motorcycle accident that left his lower right leg permanently and severely disfigured and approximately 1 to 1.5 inches shorter than his left leg.  SAC at 4.  This disability causes Plaintiff severe lower back, hip, and leg pain unless he wears an orthopedic shoe.  <u>Id.</u>  During Plaintiff's time in CDCR custody, his disability has been accommodated both by extra-wide shoes with a right sole lift, and by use of orthopedic shoes and inserts.  Bright Decl. ¶ 11.  Plaintiff also has osteoarthritis of the knees.  <u>Id.</u>

Plaintiff had a successful total knee replacement while in CDCR custody in November 2008.  Bright Decl. ¶ 12.  Records of

---

[1]  Good cause appearing, Plaintiff's motion for leave to file an opposition in excess of the Court's 25-page limit (dkt. no. 45) is GRANTED.

2

Plaintiff's physical therapy treatments reflect that in January, 2009 he was "doing well," and was observed to have a "non-antalgic gait" and mobility "without assist."  Fox Decl. ¶ 5; Ganahl Decl. Ex. B at 4.  In February 2009 he could "work out hard," including doing squats and steps; in March 2009 he was "doing lunges"; and in May 2009 he could walk two to three miles every day.  Fox Decl. ¶ 5; Ganahl Decl. Ex. B at 5.  Plaintiff's medical records reflect that his replaced knee functions well.  Fox Decl. ¶ 5; Bright Decl. ¶ 12.

In August 2010, Plaintiff sought to be moved from the first housing tier to the second, which requires traversing up and down a flight of stairs in order to access programs, services, and activities occurring throughout the day.  Fox Decl. ¶ 6. Plaintiff's primary care physician, Dr. Friederichs, approved that request.  Id.; Ganahl Decl. Ex. D, Dkt. 39-5, at 19.

In 2010, while housed at CTF, Plaintiff received new orthotic shoes that were too narrow and too long.  SAC at 5.  On January 4, 2011, Plaintiff submitted a Health Care Appeal, identified by log number CTF-S-11-00064, seeking new orthopedic shoes. Dkt. 22-2 Ex. B at 6.  Because the request sought a disability accommodation, it was processed as an ADA request. Bright Decl.    ¶ 13.  Defendant Nurse Fox, the responding ADA nurse for that appeal, scheduled Plaintiff to be examined by Defendant Dr. Bright and provided Dr. Bright with Plaintiff's relevant medical documentation to review for purposes of that examination.  Fox. Decl. ¶¶ 7-8.

On January 28, 2011, Dr. Bright, then Chief Physician and Surgeon at CTF and head of CTF's ADA program and clinic, interviewed

3

and evaluated Plaintiff in response to his appeal seeking new orthopedic shoes.  Bright Decl. ¶¶ 1, 14; Ganahl Decl. Ex. D, Dkt. 39-6 at 8-9.  Nurse Fox was present during that evaluation.  Fox Decl. ¶ 8. Plaintiff arrived to the evaluation at the CTF ADA clinic from his housing unit, a distance of nearly 350 yards, without his cane; his mobility at that time was observed to be brisk, with no discernible limp or impairment of any kind. Fox Decl. ¶ 9; Bright Decl. ¶ 19; Ganahl Decl. Ex. D, Dkt. 39-6, at 2-3.

During the evaluation, Dr. Bright determined that the orthopedic shoes Plaintiff possessed at the time were serviceable. Bright Decl. ¶ 16.  Although Plaintiff's orthopedic shoes were worn and too small, they were sufficient for him to maintain mobility. Id.  Nevertheless, because new, better-fitting orthopedic shoes would be useful to Plaintiff, Dr. Bright referred Plaintiff to the CTF orthotics clinic for new orthopedic shoes with a shoe lift. Id.; Ganahl Decl. Ex. D, Dkt. 39-6, at 2-3.  He additionally recommended that Plaintiff be provided with orthopedic shoes with a more flexible sole, as the current pair had a stiff sole which was less conducive to Plaintiff's ambulation.  Id.

In the course of the January 28, 2011 evaluation, Dr. Bright also reviewed Plaintiff's other disability needs, including a prior prescription for a cane.  Bright Decl. ¶ 19.  Dr. Bright's examination revealed that Plaintiff had a normal gait and cadence, and no pain or tenderness with his range of motion.  Id.  He also found that Plaintiff was sufficiently mobile to be housed on the second tier, to ambulate significant distances that include stairs, hills, and uneven terrain without difficulty, and to maintain

4

unimpeded access to the programs, services, and activities for which he is eligible.  Id.  Based on these findings and the fact that canes are not useful for Plaintiff's particular condition, Dr. Bright determined that Plaintiff did not qualify for use of a cane. Id. at ¶ 20.

Dr. Bright then completed a Disability Placement Program Verification for Plaintiff, noting that Plaintiff maintains sufficient mobility without a cane and may be housed on a second tier.  Bright Decl. ¶ 22.  Dr. Sepulveda, the Chief Medical Executive at CTF, signed that form on January 31, 2011, indicating his review and approval of the findings.  Id.; Ganahl Decl. Ex. D, Dkt. 39-6, at 8.  Dr. Bright also completed a Physician Request for Services requesting that Plaintiff be scheduled for an orthotics consultation, and a Comprehensive Accommodation Chrono documenting that Plaintiff was entitled to permanent access to orthopedic shoes, but that his prescription for access to a cane was discontinued. Bright Decl. ¶¶ 18, 23; Ganahl Decl. Ex. D, Dkt. 39-6, at 6, 10. Dr. Sepulveda approved and signed the Comprehensive Accommodation Chrono.  Ganahl Decl. Ex. D, Dkt. 39-6, at 10.  Plaintiff surrendered his cane to Nurse Fox on January 28, 2011.  Fox Decl. ¶ 13.

On January 31, 2011, Plaintiff submitted a Health Care Services Request Form requesting that his right to a cane be reinstated.  Bright Decl. ¶ 25; Ganahl Decl. Ex. D, Dkt. 39-6, at 11.  Plaintiff was evaluated by Dr. Friederichs, his primary care physician, on February 7, 2011, and Dr. Friederichs did not conclude that Plaintiff's condition warranted the use of a cane.  Bright

Decl. ¶ 26; Ganahl Decl. Ex. D, Dkt. 39-6, at 12-13.

On February 28, 2011, Dr. Sepulveda provided a second-level response to Plaintiff's appeal number CTF-S-11-00064, affirming Dr. Bright's determination that Plaintiff did not require a cane, but would be referred to an orthotics provider for new orthopedic shoes, and stating that Plaintiff could obtain and use state-issue extra-wide shoes along with his insoles, which would provide reasonable accommodation if his orthopedic shoes became unserviceable before he was able to obtain new ones.  Fox Decl. ¶ 15; Dkt. 22-2 Ex. B at 16-18.

Dr. Friederichs again evaluated Plaintiff on April 25, 2011, July 8, 2011, and November 7, 2011.  Bright Decl. ¶ 29; Ganahl Decl. Ex. D, Dkt. 39-7, at 2-3, 6-7, 10-11.  The November 7, 2011 Medical Progress Note states that Plaintiff was "managing fairly well" without a cane.  Bright Decl. ¶ 29; Ganahl Decl. Ex. D, Dkt. 39-7, at 10-11.  It also notes that Plaintiff had not yet been seen by an orthopedic specialist to replace his orthopedic shoes, but does not indicate that Plaintiff's orthopedic shoes, at that time, were unserviceable or did not provide sufficient accommodation to Plaintiff.  Ganahl Decl. Ex. D, Dkt. 39-7, at 10-11.  In a November 7, 2011 Physician Request for Services, Dr. Friederichs renewed the request that Plaintiff be scheduled for a routine orthotics consultation.  Id. at 9.

On December 9, 2011, Plaintiff signed a document stating he had been fitted for new orthopedic shoes and a lift by Sunrise's Orthotics/Prothetics.  Ganahl Decl. Ex. D, Dkt. 39-7, at 14. Plaintiff's January 25, 2012 signature on that document verifies he

received the orthopedic shoes and lift and was satisfied that the fit was correct.  Id.

### B

In 2004, Plaintiff filed a lawsuit against the CDCR and California State Prison – Solano, where he was formerly housed, alleging that the defendants in that case were deliberately indifferent to his medical need for orthopedic boots.  Loutzenhiser v. Traquina, Eastern District case number S-04-1937 LKK PAN.  Defs.' RJN Supp. Mot. Summ. J., Ex. B.[2]  The case was settled out of court, and the CDCR agreed to provide Plaintiff with "a second pair of prescribed orthopedic shoes and a chrono for such shoes, which shall be effective indefinitely." Id. Ex. C.  Defendants Bright and Fox were not parties to that case or to the settlement agreement.  See id.

### III

### A

Failure to state a claim is a ground for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dismissal for failure to state a claim is a ruling on a question of law. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).  "The issue is not whether the plaintiff ultimately will prevail, but whether he is entitled to offer evidence to support his claim."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

---

[2]  Good cause appearing, and no objections having been filed thereto, Defendants' Request for Judicial Notice of documents filed in Loutzenhiser v. Traquina (dkt. no. 40) is GRANTED.  See Fed R. Evid. 201(b).

1         Federal Rule of Civil Procedure 8(a)(2) requires only "a
2   short and plain statement of the claim showing that the pleader is
3   entitled to relief."  "Specific facts are not necessary; the
4   statement need only give the defendant fair notice of what the . . .
5   claim is and the grounds upon which it rests."  <u>Erickson v. Pardus</u>,
6   551 U.S. 89, 93 (2007) (citations and internal quotation marks
7   omitted).  Although in order to state a claim a complaint "does not
8   need detailed factual allegations, a plaintiff's obligation to
9   provide the 'grounds' of his 'entitle[ment] to relief' requires more
10  than labels and conclusions, and a formulaic recitation of the
11  elements of a cause of action will not do. . . .   Factual
12  allegations must be enough to raise a right to relief above the
13  speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,
14  555 (2007) (alterations in original) (citations omitted).  A motion
15  to dismiss should be granted if the complaint does not proffer
16  "enough facts to state a claim to relief that is plausible on its
17  face."  <u>Id</u>. at 570; <u>see, e.g.</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 683
18  (2009).

19                                    B

20        Summary judgment is properly granted when no genuine
21  disputes of material fact remain and when, viewing the evidence most
22  favorably to the nonmoving party, the movant is clearly entitled to
23  prevail as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex</u>
24  <u>v.Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N.</u>
25  <u>Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).  The moving party bears
26  the burden of showing there is no material factual dispute.
27  <u>Celotex</u>, 477 U.S. at 331.  Therefore, the Court must regard as true
28

the opposing party's evidence, if supported by affidavits or other evidentiary material.  Id. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  If the moving party meets its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir 1991), cert. denied, 502 U.S. 994 (1991); Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Questions of fact regarding immaterial issues cannot defeat a motion for summary judgment.  Reynolds v. County of San Diego, 84 F.3d 1162, 1168-70 (9th Cir. 1996), rev'd on other grounds by Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir. 1997).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).  Here, Plaintiff has verified his SAC and his declaration in opposition to Defendants' motion for summary judgment by signing both documents under penalty of perjury, and, for purposes of the instant order, the Court construes those documents as affidavits in opposition to Defendants' motion.  See Schroeder v. McDonald, 55 F.3d 454, 460 & n.10 (9th Cir. 1995) (finding complaint signed under penalty of perjury constituted admissible evidence).

## IV

### A

Defendants Dr. Bright and Nurse Fox argue they are entitled to summary judgment on Plaintiff's Eighth Amendment claim for deliberate indifference to medical needs on the ground that there are no material facts in dispute.  Defendants add that, assuming their actions are found to be unconstitutional, it would not have been clear to a reasonable official that such conduct was unlawful and that therefore they are entitled to qualified immunity.[3]

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976);

---

[3]  As set forth below, the Court finds that Defendants are entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claims, thereby obviating the need to address their argument that they are shielded from liability on the theory of qualified immunity.

McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements:  the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).  The "existence of chronic and substantial pain [is an] . . . indication[] that a prisoner has a 'serious' need for medical treatment."  Id. at 1060.  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of the risk but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, see Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to plaintiff's health.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

1

Regarding Plaintiff's Eighth Amendment claim premised on denial of orthopedic shoes, the Court finds the claim fails at the first step — the objective component — because Plaintiff has not alleged facts or provided evidence to show a "serious medical need." McGuckin, 974 F.2d at 1059.  The facts show that Plaintiff sought new orthopedic shoes in January 2011.  Dkt. No. 22-2 Ex. B at 6.  He alleges the orthopedic shoes he had at the time were too long and too narrow.  SAC at 5.  Plaintiff received satisfactory new orthopedic shoes by January 2012.  Ganahl Decl. Ex. D, Dkt. 39-7, at 14.  Thus, Plaintiff's claim regarding the orthopedic shoes may be characterized, at worst, as a delay in treatment.

Deliberate indifference may occur when prison officials intentionally deny or delay medical care.  Estelle, 429 U.S. at 104-05.  Where an inmate alleges delay in receiving medical treatment, however, the delay itself must have led to further injury or harm.  McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Here, Plaintiff cannot make that showing.

The undisputed facts show that, although the orthopedic shoes that Plaintiff sought to replace in January 2011 were worn, Dr. Bright determined they were not so worn that Plaintiff could not utilize them or that they would prevent his access to programs and services. Bright Decl. ¶ 16. Dr. Bright also determined that using the shoes, or not having custom orthotics at all, would not cause any further harm to Plaintiff. Id. at ¶¶ 16-17. Between January 28, 2011 and January 25, 2012 — from the date Dr. Bright recommended an orthotics consultation to the date Plaintiff received new orthopedic shoes — no medical requests submitted by Plaintiff, and no program notes or reports drafted by any medical professional, stated that Plaintiff's shoes had become unserviceable or insufficient to accommodate his needs. Id. ¶¶ 29, 33-34.

In his opposition, Plaintiff argues that, in prescribing the new orthopedic shoes, Dr. Bright impliedly admitted that Plaintiff had a "serious medical need" for new orthopedic shoes. Opp'n. at 15-17. Not so. While Defendants do not dispute that orthopedic shoes are helpful in accommodating Plaintiff's physical needs, the evidence shows that Dr. Bright prescribed new orthopedic shoes in 2011 as a courtesy to Plaintiff because they would be useful to him, but believed the shoes Plaintiff possessed at that time "were not so worn or small that Loutzenhiser could not utilize them, or that they would prevent his access to programs and services or cause him further harm." Bright Decl. ¶ 16. The act does not amount to an admission that, without the new shoes, Plaintiff would suffer "further significant injury or the 'unnecessary and wanton infliction of pain.'" See McGuckin, 974 F.2d at 1059-60.

Plaintiff also points to notes in his medical record indicating that he suffers from chronic knee and foot pain.  Opp'n. at 21-23; Pl. Decl. Ex. A.  None of these records state, however, that Plaintiff's previous orthopedic shoes exacerbated his pain.  Thus, Plaintiff's evidence does not support a finding of any further injury or harm from the delay.

Plaintiff also cannot satisfy the subjective component of his claim because, even assuming Plaintiff had a serious medical need for new orthopedic shoes, Plaintiff has not come forward with any evidence to show Dr. Bright or Nurse Fox acted with deliberate indifference to that need.  The record belies any argument that Defendants Bright and Fox purposefully ignored or failed to respond to an alleged need for new orthopedic shoes.  Rather, Defendants sought to provide Plaintiff with new shoes.

Although Dr. Bright determined that the orthopedic shoes Plaintiff possessed on January 28, 2011 were serviceable and sufficient to meet his needs, out of courtesy to Plaintiff, Dr. Bright recommended new orthopedic shoes.  Bright Decl. ¶ 16; Ganahl Decl. Ex. D, Dkt. 39-6, at 2-3.  Dr. Bright completed the paperwork necessary to assist Plaintiff in obtaining those shoes.  Bright Decl. ¶¶ 18, 23; Ganahl Decl. Ex. D, Dkt. 39-6, at 6, 10.

In doing so, Dr. Bright took all the steps he reasonably could have taken in assisting Plaintiff to obtain new orthopedic shoes. Dr. Bright did not have the final authority to actually provide new orthopedic shoes to Plaintiff.  Rather, he could – and did – recommend that they be provided to Plaintiff, but the final decision to provide orthopedic shoes to an inmate-patient must be

14

made by an orthopedic specialist.  Bright Decl. ¶ 8 & Ex. A.
Further, Dr. Bright was not aware of a delay in providing the
orthotics consultation and orthopedic shoes to Plaintiff.  Id. at ¶
31.  Similarly, Nurse Fox did not have authority over whether or
when Plaintiff received an orthotics consultation or orthopedic
shoes, nor did her assigned job duties at the time require her
involvement in any portion of Plaintiff's orthotics referral beyond
simply dropping off Dr. Bright's referral paperwork for further
processing, which she did. Fox Decl. ¶ 14.

         In his opposition, Plaintiff claims Dr. Bright must have
known of the delay in providing him with orthopedic shoes because
specialty clinic staff are required to notify either the Chief
Medical Officer or the Chief Physician and Surgeon of routine
consultation delays of more than ninety days.  Opp'n. at 19-21.
Plaintiff points to CDCR policy on outpatient services.  See Dkt.
No. 39-16 ("The designated specialty clinic staff person shall
notify the CMO or CP&S and the PCP when routine consultations exceed
the ninety (90) day time frame.") (emphasis added).  Plaintiff also
cites to an unauthenticated CTF Communication Log regarding a delay
in providing an orthotics consultation to another inmate named
Gonzalez.  Opp'n. at 20; Dkt. No. 49, Ex. A.  The document is
irrelevant.  Not only does it pertain to an orthotics consultation
for a different inmate, but it is not addressed to, and contains no
mention of, Dr. Bright or the Chief Physician and Surgeon.[4]  In any

_____

    [4]  Plaintiff requests that the Court take judicial notice of
inmate Gonzalez's CTF Communication Log.  See Dkt. No. 49.  The
request is DENIED as such irrelevant and unrelated documents are not
items for which judicial notice may be properly taken.  See Fed. R.

event, none of this is evidence that Dr. Bright was deliberately indifferent to Plaintiff's alleged need for orthopedic shoes.

Accordingly, Defendants Dr. Bright and Nurse Fox are entitled to summary judgment on Plaintiff's Eighth Amendment claim premised on the delay in Plaintiff's receipt of new orthopedic shoes.

2

Similarly, Plaintiff's Eighth Amendment claim premised on the cancellation of his cane prescription fails at the first step — the objective component.  The cane was not a "serious medical need," the deprivation of which could result in further significant injury or the "unnecessary and wanton infliction of pain."  See McGuckin, 974 F.2d at 1059.  Rather, as discussed above, Dr. Bright determined, and subsequent medical personnel affirmed, that Plaintiff did not need a cane.

The undisputed evidence shows that during the times relevant to this case, Plaintiff was mobile and well-functioning. For more than six months after Plaintiff's 2008 knee replacement surgery, Plaintiff engaged in a rigorous, directed physical therapy regimen.  Fox Decl. ¶ 5.  In addition, in 2010 Plaintiff requested second-tier housing, which would require traversing a flight of stairs to access services and activities, and his Primary Care Physician, Dr. Friederichs, approved that request.  Id. at ¶ 6; Ganahl Decl. Ex. D, Dkt. 39-5, at 19.

Dr. Bright, in his January 28, 2011 evaluation of

_____

Evid. 201(b), 401.

16

Plaintiff, determined that Plaintiff had a normal gait and sufficient mobility to walk significant distances that required traversing stairs, hills, and uneven terrain without difficulty, and to maintain unimpeded access to the programs, services, and activities for which he is eligible.  Bright Decl. ¶ 19.  Indeed, Plaintiff arrived to that evaluation at the ADA clinic without his cane, which required him to travel roughly 350 yards, including stairs.  Id.  Plaintiff's mobility on that date was brisk, with no discernible limp or impairment.  Id.; Fox Decl. ¶ 9; Ganahl Decl. Ex. D, Dkt. 39-6, at 2-3.

Plaintiff's lack of need for a cane is affirmed by his subsequent medical records.  Between January 2011 and October 2013, Plaintiff was seen by Dr. Friederichs roughly thirteen times. Bright Decl. ¶¶ 29, 33; Ganahl Decl. Ex. D, Dkt. 39-6 at 12-13 & Dkt. 39-7 at 2-3, 6-7, 10-11, 16-17, 19-20; Ganahl Decl. Ex. F, Dkt. 39-9 at 14-15, 19-20 & Dkt. 39-10 at 10-11, 19 & Dkt. 39-11 at 1, 11-12.  Other than a brief mention of the cancellation of the cane in the notes of the first appointment following that cancellation, the only mention of Plaintiff's need for, or access to, a cane in Dr. Friederichs' notes of those appointments was a statement that Plaintiff was "managing fairly well" without the cane.  Bright Decl. ¶¶ 29, 33; Ganahl Decl. Ex. D, Dkt. 39-6, at 12 & Dkt. 39-7 at 10. And none of the roughly five renewals of Plaintiff's Comprehensive Accommodation Chrono during that period granted Plaintiff permission to possess a cane.  Ganahl Decl. Ex. D, Dkt. 39-6 at 15 & Dkt. 39-7 at 12; Ganahl Decl. Ex. F, Dkt. 39-9 at 8, 11 & Dkt. 39-11 at 4.

Plaintiff argues he did have a "serious medical need" for

17

a cane based on an August 9, 2010 comprehensive accommodation chrono completed by Dr. Friederichs, which noted Plaintiff's entitlement to a cane at that time.  Opp'n. at 30-31.  But Dr. Friederichs' determination that a cane was warranted in August 2010 does not render incorrect Dr. Bright's determination, nearly six months later, to the contrary.  All medical professionals reviewing Plaintiff's disability status and accommodations through October 2013 also determined Plaintiff did not need a cane.  Dkt. 22 Ex. B, at 16-18; Bright Decl. ¶ 26; Ganahl Decl. Ex. D, Dkt. 39-6, at 12-13; Bright Decl. ¶ 27; Ganahl Decl. Ex. D, Dkt. 39-6, at 15.

Defendants have submitted a declaration from Dr. Bright setting forth that, under CDCR guidelines, a cane should be provided to an inmate-patient where the inmate-patient has a disability that significantly restricts ambulating or causes severe chronic pain, severe lower extremity edema (swelling), or acute injury.  Bright Decl.  ¶¶ 3, 7 & Ex. A.  Dr. Bright determined that Plaintiff did not suffer from any of these conditions, and thus did not qualify for use of a cane under CDCR guidelines.  Id. at ¶ 20.  Further, Dr. Bright sets forth his expert opinion that the purpose of a cane is to decrease the amount of pressure or weight on dysfunctional feet, ankles, knees, or hips during ambulation.  Id. But Plaintiff's feet, ankles, knees, and hips function normally, and canes are of no use in accommodating his leg-length discrepancy.  Id. To the contrary, in Dr. Bright's professional opinion, not having a cane may have helped Plaintiff because walking without a cane provides better anatomic gait than walking with a cane, and use of a cane — particularly when it is not necessary — can cause problems or pain

in the patient's hands, wrists, shoulders, and back.  Bright Decl. ¶ 35.  Plaintiff has failed to come forward with specific facts to support any findings to the contrary.

Finally, even assuming a serious medical need for a cane, Plaintiff has not come forward with any evidence to show Dr. Bright or Nurse Fox acted with deliberate indifference to that need — the subjective component.  Here, neither Dr. Bright or Nurse Fox "knew of" Plaintiff's need for a cane because, in their professional judgments, that "need" did not exist.  Bright Decl. ¶ 20; Fox Decl. ¶ 18.

Plaintiff argues that Dr. Bright had no authority to issue or remove his cane because Dr. Friederichs, and not Dr. Bright, was the physician who had originally prescribed the cane for Plaintiff. Opp'n. at 32-33.  Plaintiff's support for this position is Dr. Bright's interrogatory response stating that a "prescribing physician" determines whether an assistive device is medically necessary for the inmate-patient.  Opp'n. at 32; Pl. Decl. at A-21. Plaintiff's argument assumes that "prescribing physician" refers only to a physician who first prescribed an assistive device to an inmate-patient.  But Plaintiff provides no support for this interpretation.  For an inmate to possess a health care appliance the inmate must indeed possess a clinical prescription for the appliance.  Fox Decl. ¶ 12 & Ex. A.  Only CDCR facility-employed health care staff and contractors may issue diagnoses or prescriptions for inmates, and they may only do so "within the scope of their licensure[.]"  Cal. Code Regs., tit. 15, § 3354. Consequently, under department regulations, a "prescribing

physician" is not necessarily the first person who wrote a prescription, but rather any CDCR physician who, within the authority of his or her licensure, may prescribe use of medications or assistive devices.  As Chief Physician and Surgeon and a primary care physician, and as head of the ADA clinic at CTF and Salinas Valley, Dr. Bright has the authority to prescribe ADA accommodations, such as a cane, and is thus a "prescribing physician."  See Bright Decl. ¶ 2.  Dr. Bright also had the authority to cancel the cane prescription.  See id.; see also Fox Decl. ¶ 12 ("When an inmate's use of the medical appliance has been discontinued, the inmate no longer has 'permission' or 'a prescription' to possess it.")

Further, even if Nurse Fox believed that Plaintiff had a serious medical need for a cane, she did not have the authority to provide one to him.  Nurse Fox's role in this case was limited to carrying out physicians' orders.  Fox Decl. ¶ 11.  Section 54030.11 of the CDCR Operations Manual requires that, for an inmate to possess a health care appliance, such as a cane, the inmate must have a clinical prescription for the appliance.  Fox Decl. ¶ 12 & Ex. A.  But Nurse Fox does not have prescribing privileges.  Fox Decl. ¶ 13.  Plaintiff argues that, because Nurse Fox was likely aware that Dr. Bright was not the "prescribing physician" who originally prescribed the cane to him, she should have also known that Dr. Bright had no right to cancel that prescription, and thus she was under no duty to assist him in carrying out the cancellation of that prescription.  Opp'n. at 37-40.  As explained above, however, Dr. Bright had the authority to cancel the prescription.

1          At most, Plaintiff's disagreement with the determination

2    that he did not need a cane amounts to a difference of medical

3    opinion.   Plaintiff's mere disagreement with Defendants' decisions,

4    however, does not establish deliberate indifference.   See Franklin

5    v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding "[a]

6    difference of opinion between a prisoner-patient and prison medical

7    authorities regarding treatment does not give rise to a § 1983

8    claim").   In sum, Plaintiff fails to provide evidence that

9    Defendants' decisions were medically unacceptable or that Defendants

10   denied Plaintiff a cane in conscious disregard of Plaintiff's

11   health.

12          Accordingly, Defendants Dr. Bright and Nurse Fox are

13   entitled to summary judgment on Plaintiff's Eighth Amendment claim

14   premised on the cancellation of his cane prescription.

15                                    B

16          Defendants CDCR and CTF-Medical argue they are entitled to

17   summary judgment on Plaintiff's ADA claim on the ground that there

18   are no material facts in dispute.

19          Title II of the ADA provides that "no qualified individual

20   with a disability shall, by reason of such disability, be excluded

21   from participation in or be denied the benefits of the services,

22   programs, or activities of a public entity, or be subjected to

23   discrimination by any such entity."   42 U.S.C. § 12132 (1990).   To

24   succeed on his ADA claim, Plaintiff must demonstrate that:  (1) he

25   is an individual with a disability; (2) he is otherwise qualified to

26   participate in or receive the benefit of some public entity's

27   services, programs, or activities; (3) he was either excluded from

28

                                     21

participation in or denied the benefits of the public entity's

services, programs or activities, or was otherwise discriminated

against by the public entity; and (4) such exclusion, denial of

benefits, or discrimination was by reason of his disability.

<u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002).[5]  Money

damages are not available for a violation of the ADA absent a

showing of discriminatory intent by the defendant.  <u>Duvall v. County

of Kitsap</u>, 260 F.3d 1124, 1138 (9th Cir. 2001).

Plaintiff argues that he has a qualifying disability

insofar as his leg discrepancy makes it painful for him to walk and

bend.  Opp'n. at 44-46.  Plaintiff further argues that because it is

painful for him to walk to the CTF recreational yard and the CTF

chapel, he has been denied "meaningful access" to these services.

<u>Id.</u> at. 48-51; Pl. Decl. at 1-2.  Specifically, because he does not

have a cane to absorb the pounding from the uneven terrain in CTF's

hallways and on the recreational yard, it is painful for him to walk

to the yard and he is unable to exercise or participate in any of

the recreational programs once he arrives there.  <u>Id.</u>  Similarly,

without a cane, it is painful for him to walk the uneven terrain to

the chapel, and he is limited in getting up and down in his seat

when it is time for prayer.  <u>Id.</u>

Defendants, in their summary judgment motion, offer no

--------

[5]  Although Title II of the ADA does not expressly address the provision of reasonable accommodations, one of the implementing regulations does so, as follows: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7) (2011).

argument or evidence addressing the four elements of an ADA claim or showing that the elements are not satisfied in this case.  Rather, Defendants focus entirely on Plaintiff's claim for money damages and argue that he is not entitled to money damages here because he cannot show intentional discrimination as required by <u>Duvall</u>. Plaintiff makes clear in his opposition, however, that he is not seeking money damages on his ADA claim.  Opp'n. at 43. Consequently, only Plaintiff's request for injunctive relief remains.  Inexplicably, Defendants, in their reply, again only address Plaintiff's ADA claim under the standard applicable to claims for monetary relief.

Consequently, the Court finds Defendants have not met their burden on summary judgment as to the ADA claim.  Specifically, Defendants fail to demonstrate the absence of a genuine issue of material fact as to whether Plaintiff has a qualifying disability and was excluded from participation in or denied the benefits of qualifying services, programs, or activities by reason of that disability.  Accordingly, Defendants CDCR and CTF-Medical are not entitled to summary judgment on Plaintiff's ADA claim.[6]

C

Defendants argue that Plaintiff's state-law breach of contract claim should be dismissed as to Defendant CDCR because the

---

[6]   The Court does not address Defendants' qualified immunity argument because qualified immunity does not apply to claims for injunctive relief.  <u>See</u> <u>Henry A. v. Willden</u>, 678 F.3d 991, 999 (9th Cir. 2012) (qualified immunity unavailable as defense where injunctive relief is sought instead of or in addition to damages).  Qualified immunity must also be denied as premature given that Defendants have not addressed the elements of Plaintiff's ADA claim.

CDCR has Eleventh Amendment immunity.  The Court agrees.  The Eleventh Amendment bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state.  See Alabama v. Pugh, 438 U.S. 781, 782 (1978).  Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued regardless of the relief sought.  Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).

This Eleventh Amendment immunity also extends to suits against a state agency, see, e.g., Brown v. Cal. Dep't of Corrs., 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity), and, in some instances, against state officials, Demery v. Kupperman, 735 F.2d 1139, 1145-46 (9th Cir. 1984).  A suit will be barred under the Eleventh Amendment if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the state from acting, or to compel it to act.  See id. (citing Dugan v. Rank, 372 U.S. 609, 620 (1963)).  For example, the Eleventh Amendment provides absolute immunity to state officials for suits in federal court alleging pendent claims for breach of state law.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).  The CDCR is therefore immune from the state-law breach of contract claims asserted herein.

Defendants argue that Plaintiff's state-law breach of contract claim should also be dismissed as to individual Defendants

Dr. Bright and Nurse Fox because Dr. Bright and Nurse Fox were not parties to the settlement agreement in Loutzenhiser v. Traquina, case number S-04-1937 LKK PAN.  The Court agrees.  Dr. Bright and Nurse Fox are not proper defendants on the breach of contract claim because they were not parties to the settlement agreement and therefore have no contractual relationship with Plaintiff.  See Defs.' RJN Supp. Mot. Summ. J., Ex. C.  In an apparent attempt to avoid this bar, Plaintiff argues in his opposition that the breach of contract claim is brought against Dr. Bright and Nurse Fox in their official capacities only.  Opp'n. at 6-8.  For the reasons discussed above, Dr. Bright and Nurse Fox are protected from any such official capacity claim under Eleventh Amendment immunity.  See Pennhurst, 465 U.S. at 106 (Eleventh Amendment prohibits district court from ordering state officials to conform their conduct to state law).

Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim will be GRANTED.[7]

V

For the foregoing reasons, the Court orders as follows:

1.  Defendants' motion to dismiss is hereby GRANTED IN PART and DENIED IN PART as follows:

a.  Defendant's motion to dismiss Plaintiff's state-

---

[7]  Plaintiff may seek to enforce the settlement agreement by filing an action in state court.  Plaintiff may also be able file a motion to enforce in Eastern District case number S-04-1937 LKK PAN. Plaintiff is advised, however, that jurisdiction exists only if the Eastern District court expressly retained jurisdiction to enforce the agreement or if the terms of the agreement were incorporated into the dismissal order.  See Hagestad v. Tragesser, 49 F. 3d 1430, 1433 (9th Cir. 1995).

law breach of contract claim is GRANTED as to all Defendants.

                b.  Defendants' motion to dismiss Plaintiff's claim for punitive damages is DENIED as moot because Plaintiff only seeks injunctive relief on his remaining ADA claim.

        2.  Defendants' motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART as follows:

                a.  Summary judgment is GRANTED in favor of Defendants Dr. Bright and Nurse Fox on Plaintiff's Eighth Amendment claim.

                b.  Summary judgment is DENIED with respect to Plaintiff's ADA claim against CDCR and CTF-Medical.

                c.  Summary judgment is DENIED as to Plaintiff's claim for injunctive relief because the ADA provides for injunctive relief.  See 42 U.S.C. § 12133 (1990).

        3.  The case is hereby REFERRED to Magistrate Judge Nandor Vadas for settlement proceedings on Plaintiff's ADA claim seeking injunctive relief against CDCR and CTF-Medical.  Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas' calendar will permit. Magistrate Judge Vadas shall coordinate a place, time, and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.  The Clerk is directed to serve Magistrate Judge Vadas with a copy of this Order.

        4.  The Clerk is further directed to terminate Dr. Bright and Nurse Fox as defendants on the court docket.

1    5.   In view of the referral, further proceedings in this
2    case are hereby STAYED.  If the case is not settled, the Court will
3    enter a new scheduling order for further proceedings.

4    6.   ~~The Clerk is further directed to ADMINISTRATIVELY~~
5    ~~CLOSE the case pending the stay.  This has no legal effect; it is~~
6    ~~purely a statistical procedure.~~

7    This Order terminates docket nos. 39 and 45.

8    IT IS SO ORDERED.

9    DATED      _09/15/2014_

10   THELTON E. HENDERSON
     United States District Judge

15   G:\PRO-SE\TEH\CR.11\Loutzenhiser-11-2925-MSJ.wpd

27